# Commonwealth ex rel. v. Potter County Water Company, Appellant.

*Corporation—Water companies—Quo warranto—Ouster—Impure water—Acts of June 14, 1836, P. L. 621, and April 29, 1874, sec. 34, P. L. 73.*

The remedy of quo warranto against a water company for supplying impure water, as provided by the Act of June 14, 1836, P. L. 621, is in no way affected or repealed by section 34 of the Act of April 29, 1874, P. L. 73, which provides a method of relief to an individual citizen who may make complaint of the impurity of water furnished.

A judgment of ouster on a verdict for the commonwealth on quo warranto proceedings against a water company will be sustained where the evidence for the commonwealth, although contradicted, tends to show that the defendant's line was connected with a mill pond into which the sewage of the town was discharged, and that during five years at periods of low water, and when fires occurred, water from the pond was pumped into the main service lines of the company, and that such water polluted the other water, and frequently rendered it injurious and unwholesome and unfit for drinking or cooking, and even for washing. In such a case it is immaterial that the company was under an agreement with the borough to maintain a connection with the mill pond.

Argued May 1, 1905. Appeal, No. 139, Jan. T., 1904, by defendant, from judgment of C. P. Potter Co., Dec. T., 1901, No. 13, on verdict for plaintiff in case of Commonwealth ex rel. John P. Elkin, attorney general, v. Potter County Water Company. Before MITCHELL, C. J., DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Quo warranto against a water company. Before BOUTON, P. J., specially presiding.

The facts are stated in the opinion of the Supreme Court.

Verdict and judgment for plaintiff upon which judgment of ouster was entered.

*Errors assigned* were (1–3) exclusion of various offers of evidence to show an agreement between the defendant and the borough of Austin by which the defendant was bound to maintain a connection with the mill pond; (7) in refusing binding instructions for defendant; (8) in overruling the motion to quash on the ground that the remedy of quo warranto provided by the Act of June 14, 1836, P. L. 621, was superseded as far as water and gas companies were concerned by the Act of April 29, 1874, sec. 34, P. L. 73.

*Walter Lyon,* of *Lyon, McKee & Mitchell,* with him *Siebert & Lillibridge,* for appellant.—With proof of impurities of the water only at isolated times, and the great preponderance of testimony being in favor of the purity of the water, there certainly was not enough evidence to base a verdict for the plaintiff, and the case should have been taken from the jury, as requested in the point upon which the seventh specification is based.

The question in this case should not have been merely whether this company at some time or times had not supplied pure water, but whether it had persistently failed to do so, and had so neglected its public duty as that it had violated its contract with the state to such an extent as would warrant the state in abrogating its contract.

The court had no jurisdiction: Com. v. Towanda Water Works, 22 W. N. C. 429.

*John G. Johnson,* with him *F. E. Baldwin, W. I. Lewis* and *Arch. F. Jones,* for appellee.—The appellant cannot complain that in these quo warranto proceedings it was not allowed to show that it was under contract to do the injurious and criminal act it was charged with perpetrating: Potter County Water Co. v. Austin Borough, 206 Pa. 297.

The court had jurisdiction: Com. v. Towanda Water Works, 1 Monaghan, 500; Birmingham, etc., Turnpike Road Co. v. Com., 1 Penny. 458; People v. Turnpike Co., 23 Wend. 222.

It has been held in many states that the grant of special remedies does not take away the remedy by quo warranto: Capital City Water Company v. State, 105 Ala. 406 (18 So. Repr. 62); People v. Londoner, 13 Colo. 303 (22 Pac. Repr. 764);

People v. Bird, 20 Ill. App. 568; Snowball v. People, 147 Ill. 260 (35 N. E. Repr. 538); State v. Shay, 101 Ind. 36; State v. St. Paul & S. C. Ry. Co., 35 Minn. 222 (28 N. W. Repr. 245); State v. Frazier, 28 Neb. 438 (44 N. W. Repr. 471); State v. Kearn, 17 R. I. 391 (22 Atl. Repr. 322, 1018).

OPINION BY MR. JUSTICE POTTER, June 22, 1905:

On September 16, 1901, the attorney general, on behalf of the commonwealth, filed in the court of common pleas of Potter county a suggestion for a writ of quo warranto, wherein it was set forth that the defendant company was incorporated under the title of the Potter County Water Company on December 3, 1897; that the purpose of the corporation as disclosed by the articles of incorporation is the " supplying water to the public in the borough of Austin, Potter county, Pennsylvania, and to such persons, partnership and associations residing therein and adjacent thereto as may desire the same;" and that the defendant company proceeded to lay pipes in the borough of Austin, and to procure and store water in furtherance of its corporate purpose. It is then averred that since the date of its incorporation, the defendant company " has failed, neglected and refused to perform and carry out the purposes of its incorporation " in that it does not supply the whole borough of Austin, or even that part of it where it has laid its pipes, " with a sufficient supply of water for drinking and domestic purposes," or " for the extinguishment of fires," and in that " the said defendant company has and maintains within the limits of said borough a steam pump connected with a floating dam or mill pond, and in times of low water and when fires occur in said borough, it is so arranged that water is pumped from the mill pond or floating dam into the main service lines of the company, thus polluting and rendering unfit for use the water so furnished to the citizens of the borough. That the said mill dam is so located that it receives the sewage from a large portion of the borough and that the water is impure, unwholesome, poisonous and not fit for use." The suggestion is then made that the court award a writ of quo warranto commanding the defendant company to show cause why it should not be ousted and its charter declared null and void. The defendant company in its original answer denied specifi-

cally the material allegations of the suggestion of the attorney general, and averred that "it has erected and maintained, and does now maintain, adequate reservoirs for the storing of water, and has laid and maintained private mains, pipe lines and connections to and into the borough of Austin, and it has been since its incorporation and the construction of its works, engaged in supplying a sufficient quantity of pure water to the public of said borough for all purposes within the terms of its charter." Subsequently, in an amendment to the answer, the defendant company further averred "that the connection between the steam pump and said mill pond is only maintained for the technical reason that in the grant of the franchise by the borough of Austin to John P. McIntyre, under which grant the Potter County Water Company entered said borough, it is enacted and provided: 'section 5 : The said John P. McIntyre, his associates, successors and assigns, shall not disconnect the pump which was purchased by said private parties and the tank of the Standard Wood Company, attached to said iron line, but said pump and tank shall be kept ready for use in case of necessity.'"

A formal replication was filed to the answer, and the case regularly proceeded to trial before a jury. At the trial, a motion was made on behalf of the defendant company, to quash the writ, for the reason that the court was without jurisdiction to try, in this form of action, the issue framed by the pleadings, it being contended that the Act of April 29, 1874, P. L. 73, provides a remedy and repeals by implication so much of the act of June 14, 1836, as relates to water and gas companies. The court below overruled the motion to quash, and after a trial upon the merits, the jury returned a verdict in favor of the commonwealth. In accordance with this verdict, the judgment of ouster was entered on April 22, 1903, against the defendant corporation, and a perpetual injunction was issued "restraining said defendant, its officers, agents and servants from exercising any of the rights, liberties or franchises conferred by act of assembly or the charter above named."

The assignments of error question the jurisdiction of the court, and complain of the exclusion of certain evidence, and also question the sufficiency of the evidence to support a judgment of ouster.

We have no doubt whatever as to the jurisdiction of the court to grant relief in this form. The second section of the Act of June 14, 1836, P. L. 621, authorizes the courts of common pleas to issue writs of quo warranto, inter alia, ": In case any corporation as aforesaid shall forfeit by misuser or non user, its corporate rights, privileges or franchises."

It is contended on behalf of the defendant company that it was incorporated under the act of April 29, 1874, and that the third clause of section 34 of that act provides a method of relief to any citizen who may make complaint of the impurity of the water furnished, and that, consequently, this remedy excludes that by quo warranto proceedings under the act of 1836. It is true that any private citizen may, under the act of 1874, file a bill in the court of common pleas of the proper county, and that the court, after hearing, is empowered to make such order as may seem just and equitable, and may compel the corporation to correct the evil complained of. But this remedy is given to the private citizen for the purpose of redressing a wrong done to him as an individual user of water. The remedy by quo warranto, on the other hand, is instituted by suggestion of the attorney general for the correction of a wrong committed against the general public by the corporation, in violation or abuse of its charter rights. In the absence of any express words of exclusion in the act of 1874, we see no reason for holding that it takes away from the commonwealth by implication the remedy for the correction of a public injury. We have no doubt as to the sufficiency of the evidence in this case to support the judgment of ouster. It appears that, prior to the incorporation of the defendant company, the borough of Austin was supplied with water for domestic use from springs by individuals and a corporation called the Lumber City Water Company. For the purpose of affording protection against fire, certain individuals constructed, and then transferred to the borough, a line of wrought iron pipe, which was connected with a mill pond in the lower part of the borough into which the sewage of the town was discharged. The defendant company secured the control of the Lumber City Water Company, and also of the iron line, from the borough, obligating itself in return therefor to furnish to the borough, water for fire purposes for a specified number of hydrants. In time of drought

and in cases of fire, the defendant company pumped the water from the pond through the iron pipe into its main water pipes. The evidence on the part of the commonwealth was clear that from the year 1897 to and including 1902, the water furnished by the defendant company for domestic consumption to the public, was at frequent times injurious and unwholesome, and that it was of an oily consistency, reddish in color, disagreeable in odor, and was contaminated with sewage and contained the germs of disease; and was consequently unfit for drinking or cooking, or even for the purpose of washing. There was, of course, evidence on the part of the defendant company tending to show the wholesome and pure character of the water which it furnished. But the credibility of the witnesses and the weight to be given to the testimony in this respect, was for the jury, and they, by their verdict, have sustained the claims of the commonwealth.

The appellant also complains of the exclusion as evidence, by the court below, of certain portions of the ordinance of the borough, which provided that the connection with the iron line and the pond should be maintained. It was argued that by reason of the contract contained in the ordinance, the water company was forbidden to disconnect the pumps attached to the iron line, and that it was not therefore responsible for the bad character of water which came from the pond. But this was only to provide against contingencies, and it is apparent that, even if it was necessary to use water from the pond at certain times, as in case of fire, yet reason and common sense would require after such use, a thorough flushing out of the pipes, in order to prevent pollution of the water supplied for domestic purposes. Nothing within the limits of reason could justify a failure upon the part of the water company to furnish to the public water which was at least reasonably pure and comparatively wholesome.

In affirming the second point for charge presented on behalf of the defendant company, the court below instructed the jury that it was not sufficient to show a single failure to furnish a sufficient supply of wholesome water, nor even to prove several isolated acts of negligence, but that a continued and persistent neglect of duty must be shown, or the verdict must be for the defendant. The court also repeatedly said to the jury, in the

course of the charge, that before the charter could be revoked, they must find a substantial violation of the duty owed by the corporation, and that occasional violation or instances of neglect would not be sufficient.   Over and over again the test was impressed upon the jury in such language as this : " It would not be an occasional violation, an occasional neglect of their duty which would authorize the revocation of their charter."   " The failure of this defendant company to perform its corporate duties, to perform the duties imposed upon it by the law and its charter, must not be an occasional failure, but there must be a substantial failure, and there must be such failures as are continuous and persisted in."   And again, if " the water was not polluted . . . . or that it was only upon isolated occasions that it was turned on, happening once or twice, or a few times, then for that you would not be justified in finding a wilful, negligent and substantial violation of the charter duties of this corporation."   And lastly, he said to the jury : " If you find the failure to comply with their corporate duties has not been a substantial, wilful and negligent failure ; that the failure to supply water as to quantity or quality was only occasional and did not cover a long period of time, and was not continuous, it would be equally your duty to find a verdict in favor of the defendant company."   Yet, after this fair and careful charge, the jury sustained the contention of the commonwealth.

We see nothing in the manner in which the case was submitted to the jury of which the defendant company has any just reason to complain.   The assignments of error are overruled and the judgment is affirmed.